FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 1 7 2007

JAMES N. HATTEN, Clerk
By: _____
                    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CYNTHIA WILLIAMS,

       Plaintiff,

v.

CABLE NEWS NETWORK, LP,

       Defendant.

CIVIL ACTION NO.

1:06-CV-1340-JEC

## O R D E R   &   O P I N I O N

This case is presently before the Court on plaintiff's Motion to Amend [13], defendant's Motion for Summary Judgment [28], defendant's Motion to Strike [36], and defendant's Motion for Leave to File Supplemental Declaration [37]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Motion to Amend [13] should be **GRANTED as unopposed,** defendant's Motion for Summary Judgment [28] should be **GRANTED,** defendant's Motion to Strike [36] should be **DENIED as moot,** and defendant's Motion for Leave to File Supplemental Declaration [37] should be **GRANTED as unopposed.**

### BACKGROUND

This is an employment discrimination case. Defendant Cable News Network, Inc. ("CNN") hired plaintiff in 1996 as a legal assistant.

AO 72A
(Rev.8/82)

(Compl. [1] at ¶ 6.)  In 2001, plaintiff received a promotion to the position of Unit Manager II.  (*Id.* at ¶ 9.)  As a Unit Manager II, plaintiff was responsible for various administrative duties related to budgeting, staffing, and payroll for four departments that comprise the News Operations division.  (*Id.*)  Cindy Patrick, the Executive Vice President of News Operations, was plaintiff's immediate supervisor.  (Def.'s Statement of Material Facts "DSMF" [29] at ¶ 3.)

Approximately a year prior to her promotion to the Unit Manager II position, plaintiff was diagnosed with lupus and acute keratoconus, a related vision problem.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") [33] at 3; Williams Dep. at 412, 422.) A note from the Clayton Eye Center, which documents plaintiff's treatment between 2000 and 2004, indicates that plaintiff had "extremely poor vision in each eye" and at times was "basically legally blind because of [an] inability to wear contact lenses." (Williams Dep. at Ex. 33.)  Another note from the Clayton Eye Center states that plaintiff had "extremely compromised visual acuity in each eye" and that she had been referred to a surgeon for an evaluation for corneal transplant.  (*Id.* at Ex. 43.)

In 2001, plaintiff took a leave of absence from work because she needed eye surgery.  (DSMF [29] at ¶ 8.)  Plaintiff received full pay during the 2001 leave, and returned from leave to the same position,

2

with the same pay, title and benefits. (*Id.*)  Plaintiff took another leave in 2002 for eye surgery. (*Id.* at ¶ 9.)  Again, plaintiff received full pay during the leave, and returned from leave to the same position. (*Id.*)  In addition to allowing plaintiff at least two leaves of absence, defendant provided several other accommodations to enable plaintiff to continue to perform her job, including: 1) a modified schedule; 2) a large computer monitor; 3) an audio device attached to her computer; and 4) an office with a window and natural light even though plaintiff's position did not merit a window office.[1] (*Id.* at ¶ 14.)

Plaintiff's performance in the Unit Manager II position was generally good and she received favorable reviews in 2002, 2003, and 2004. (Williams Dep. at Exs. 14, 24, and 30.)  In both her 2003 and her 2004 reviews, however, Patrick noted some issues with plaintiff's judgment concerning confidential matters.  In the 2003 review, Patrick indicated that at times plaintiff had "overstepped her responsibilities" by communicating directly with employees when it would have been more appropriate to "pass details along to managers

---

[1]     Plaintiff contends that she was forced to secure these accommodations while Patrick, her immediate supervisor, was on vacation. (Pl.'s Resp. to DSMF [34] at ¶ 14 and Pl.'s Statement of Material Facts ("PSMF") [35] at ¶ 10.)  Nevertheless, it is undisputed that defendant ultimately provided plaintiff with a modified work schedule, specialized audio and computer equipment, and a window office to address her vision issues.

and enabling . . . communication to take place at that level." (*Id.*

at Ex. 24.)  In her 2004 review, Patrick more pointedly stated that:

> [Plaintiff] is trusted with confidential information
> every day.  I have no choice but to assume she is
> operating with the integrity her job requires.  Any
> demonstrations of unprofessional behavior and
> communications reflect badly on the department and very
> badly on [plaintiff].  If she is to stay in this
> position, we have to get back to where her communications
> are respectful of others and professionally written and
> her judgment is professionally sharp.  At this point in
> her position she should be well past these difficulties.

(*Id.* at Ex. 30.)

On April 12, 2005, plaintiff sent an e-mail message with the

subject line "Pay Error" to two employees, with a cc to Patrick.

(Williams Dep. at Ex. 2.)  The e-mail, which identified both

employees by name, stated that a pay error had occurred, and that the

additional pay one employee had received actually belonged to the

other employee.[2]  (*Id.*)  Patrick e-mailed plaintiff back almost

immediately, asking whether she should have shared each employee's

salary information with the other.  (*Id.*)  Later that day, Drenda

Jones, defendant's Human Resources Director, sent plaintiff an e-mail

informing her that "it is highly inappropriate to share employee

information under any circumstances."  (*Id.*; Jones Aff. at ¶ 3.)

---

[2]  Plaintiff denies this assertion, but the record evidence she
cites does not support her denial.  (Pl.'s Resp. to DSMF [34] at ¶
22.)  In addition, the record contains several e-mails confirming
defendant's description of the incident.  (Williams Dep. at Ex. 2.)

4

On the same day, Patrick and Jones, along with senior manager Kimberley Chandler, met in Patrick's office to discuss a pending reorganization. (DSMF [29] at ¶ 23.)  The goal of the reorganization was to consolidate certain administrative functions of the News Operations division. (*Id.*)  At the time of the meeting, management had not made any definitive plans about how the employees under Patrick's supervision would be affected by the reorganization. (*Id.*)  The purpose of the meeting was to discuss various issues related to the reorganization and to assess the relative strengths and weaknesses of Patrick's administrative employees, including plaintiff. (*Id.*)

Although plaintiff was not invited to the above meeting, she stood outside Patrick's door and listened to the conversation.[3] (DSMF [29] at ¶ 24.)  Plaintiff recalled hearing Chandler, Jones, and Patrick discussing: (1) the new structure of the division; (2) Patrick's concerns about how her employees would fit into the new structure; (3) Patrick's assessment of plaintiff's judgment and value as an employee; (4) the "Pay Error" e-mail; and (5) options for additional senior manager positions with the reorganization. (*Id.*)

---

[3]  Plaintiff denies that she listened to the conversation, but admits that she "heard" the conversation. (Pl.'s Resp. to DSMF [34] at ¶ 26.)  In order to hear as much of the conversation that plaintiff recalled in her deposition, she had to have listened to it. (*See* Williams Dep. at 37-39, 317-319.)

Plaintiff also claims that she heard Patrick express reservations about plaintiff's long-term value as plaintiff "had some issues with sight and had had some time away from the position."[4] (Williams Dep. at 37.)

On April 22, 2005, plaintiff walked into Patrick's office and asked her how the reorganization would affect plaintiff's pay. (DSMF [29] at ¶ 25.) Plaintiff also told Patrick that she was disappointed that Patrick had shared the "Pay Error" issue with Chandler and Jones. (*Id.*) Patrick asked plaintiff how she knew this had happened, to which plaintiff replied that she had heard the discussion between Patrick, Jones, and Chandler during the April 12 meeting. (*Id.*) Patrick claims that she was "furious and stunned" by plaintiff's admission, and plaintiff admitted in her deposition that Patrick was visibly upset and angry. (Patrick Aff. at ¶ 6; Williams Dep. at 311.)

Patrick subsequently told Jones about her conversation with plaintiff. (Patrick Aff. at ¶ 6.) She further informed Jones that plaintiff's actions had irrevocably breached her trust in plaintiff and evidenced a severe lack of judgment on plaintiff's part. (*Id.*) Jones called plaintiff to her office to hear her version of the

---

[4] Patrick and Jones have submitted affidavits stating that they did not discuss plaintiff's vision at the April 12, 2005 meeting. (Patrick Aff. at ¶ 5 and Jones Aff. at ¶ 3.)

6

events.   (Jones Aff. at ¶ 4.)   When plaintiff admitted to Jones that she had heard the April 12 conversation, Jones sent plaintiff home. (*Id.*) After further investigation, she recommended that plaintiff be terminated.    (*Id.*)    Patrick agreed with the recommendation and decided to terminate plaintiff. (Patrick Aff. at ¶ 6.)  Jones called plaintiff at home on April 27, 2005 and told her she was terminated effective that day.  (Jones Aff. at ¶ 4.)

Plaintiff filed an EEOC charge of discrimination on October 11, 2005.  (Pl.'s Resp. [33] at Ex. 1.)  In her charge, she specified that she had been discriminated against based on her disability. (*Id.*) Specifically, she stated that she was terminated on April 28, 2005, and that although the official reason for her termination was "inappropriate behavior," she believed that she had been terminated because of her disability, in violation of the ADA.  (*Id.*)

The EEOC issued plaintiff a notice of right to sue on March 2, 2006.   Plaintiff subsequently filed this lawsuit asserting claims under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*   (Compl. [1].)   Defendant has filed a motion for summary judgment on plaintiff's ADA claims, which is presently before the Court.

## DISCUSSION

### I.   Summary Judgment Standard

Summary   judgment   is   appropriate   when   the   "pleadings,

7

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."" FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge

AO 72A
(Rev.8/82)

his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

## II. **Plaintiff's Title VII Claims**

In response to defendant's motion for summary judgment, plaintiff alleges, for the first time, that defendant discriminated against her on the basis of her race, in violation of Title VII. (Pl.'s Resp. [33] at 12-15.) The complaint in this case does not refer to Title VII or contain any allegations that remotely suggest race discrimination. (*See generally*, Compl. [1].) Plaintiff cannot amend her complaint by adding a Title VII allegation in response to defendant's summary judgment motion. *See* FED. R. CIV. P. 15(a)(requiring leave of court to amend a complaint after a

9

responsive pleading is served).[5]

Moreover, any Title VII claim is barred by plaintiff's failure to file an EEOC charge asserting race discrimination.  Before filing a Title VII action, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC.  *Gregory v. Georgia Dep't of Human Res.,* 355 F.3d 1277, 1279 (11th Cir. 2004). Like plaintiff's complaint, the EEOC charge she filed in October, 2005 did not mention race discrimination, and did not include any allegations that could possibly implicate Title VII.  (Pl.'s Resp. [33] at Ex. 1.)  Accordingly, defendant's motion for summary judgment on plaintiff's Title VII claim is **GRANTED**.

Furthermore, there is no evidence in the record to support plaintiff's race discrimination claim.  The basis of plaintiff's race discrimination claim is that defendant failed to award her "step-up" pay" when she assumed Patrick's duties during Patrick's extended absence for a foreign adoption and surgery.[6]  (*Id.* at 14.)  According to plaintiff, defendant regularly awarded white employees, but not

---

[5]  Plaintiff filed a Motion to Amend, which the Court GRANTS as unopposed.  (Pl.'s Mot. to Amend [13].)  However, plaintiff's amended complaint merely corrects minor inaccuracies and omissions in the original complaint; it does not allege race discrimination or assert a claim under Title VII.  (Amended Compl. [14].)

[6]  Defendant provides increased pay, or "step-up" pay, to certain employees when they temporarily assume the duties of a higher paid employee.  (Pl.'s Resp. [33] at 14.) )

AO 72A
(Rev.8/82)

black employees including herself, step-up pay.  (*Id.*)   It is
undisputed, however, that plaintiff was an exempt employee, and that
exempt employees are not eligible for step-up pay.  (Jones Aff. at ¶
5, attached to Def.'s Mot. to File Supplemental Decl. [37].)
Defendant's failure to provide a benefit to which plaintiff was not
eligible cannot support a claim for race discrimination.  For this
additional reason, summary judgment is appropriate.

III. **Plaintiff's ADA Claims**

The ADA was designed to prohibit discrimination against disabled
individuals.  *D'Angelo v. ConAgra Foods, Inc.,* 422 F.3d 1220, 1225
(11th Cir. 2005).  The terms of the statute provide that:

> No covered entity shall discriminate against a
> qualified individual with a disability because
> of the disability of such individual in regard
> to job application procedures, the hiring,
> advancement, or discharge of employees,
> employee compensation, job training, and other
> terms, conditions, and privileges of
> employment.

42 U.S.C. § 12112(a).   Plaintiff contends that defendant
discriminated against her because of her disability when it failed to
promote her and terminated her employment. (Compl. [1] at ¶¶ 24-26.)
Plaintiff argues, further, that defendant retaliated against her for
asserting her rights under the ADA.  (*Id.* at ¶¶ 28-32.)

A.    **Disability Discrimination**

To establish a *prima facie* case of discrimination under the ADA,

11

plaintiff must first show that she has a disability, as defined under the Act. *Carruthers v. BSA Adver., Inc.,* 357 F.3d 1213, 1215–16 (11th Cir. 2004).   Under the ADA, an individual is "disabled" if she:

> A)   [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> B)   [has] a record of such an impairment; or
>
> C)   [is] regarded as having such an impairment.

42 U.S.C. § 12102(2).

Plaintiff alleges in her Complaint that her eye disorder is an "impairment" that substantially limits one or more of her major life activities, qualifying her as disabled under § 12102(2)(A). (Compl. [1] at ¶ 7.)   In the alternative, plaintiff argues that she has a "record" of such an impairment under § 12102(2)(B).[7] (Pl.'s Resp. [33] at 8.)   After a careful review of all the evidence in the record, the Court concludes that plaintiff cannot establish that she is "disabled" under definition (A) or that she has a "record of" being disabled under definition (B).

1. Plaintiff is not "disabled" under § 12102(2)(A).

Defendant concedes that plaintiff has a vision impairment.

---

[7]   Plaintiff does not contend that defendant "regarded" her as disabled under § 12102(2)(B). (*See* Pl.'s Resp. [33] at 9.)

AO 72A
(Rev.8/82)

(Def.'s Br. [31] at 4.)   Merely having an impairment, however, does not render an individual "disabled" under § 12102(2)(A).   *Collado v. United Parcel Serv., Co.,* 419 F.3d 1143, 1155 (11th Cir. 2005). Plaintiff must also show that her impairment substantially limits one or more of her major life activities.   *Id.*   That is, plaintiff must show that as a result of her impairment she is "unable to perform" a major life activity, or "significantly restricted as to the condition, manner, or duration" of performance in comparison with the average person in the general population.   29 C.F.R. §§ 1630.2(j)(1)(i),(ii).

Plaintiff's deposition testimony undermines her argument that she was disabled at the time defendant terminated her employment. Plaintiff testified that, throughout her tenure with defendant, she was able to: (1) work on the computer; (2) complete paperwork; (3) review spreadsheets and other work-related documents such as paper time sheets and her personnel file; (4) send and receive e-mail; and (5) sign and write rebuttals to her performance reviews.   (Williams Dep. at 112, 137, 142, 175, 177, 230, 270, 416 and Ex. 2; Pl.'s Response [33] at Ex. 14.)   Plaintiff acknowledged, further, that she can still see well enough to read and write, watch tv, go to the grocery store and pay for her items, go to church, use an ATM, and go on walks in the park.   (*Id.* at 114-115.)

13

The only limitation plaintiff could identify was her current inability to drive or read small labels. (Williams Dep. at 412-413.) It appears that plaintiff had similar limitations when defendant terminated her employment. (*Id.* at 8.) However, driving is not a major life activity, and the inability to read fine print, while annoying, is not a "substantial limitation." *See Chenoweth v. Hillsborough County,* 250 F.3d 1328, 1329 (11th Cir. 2001) ("It would at the least be an oddity that a major life activity should require a license from the state, revocable for a variety of reasons including failure to insure.") and *Rossbach v. City of Miami,* 371 F.3d 1354, 1358 (11th Cir. 2004) ("someone who walks, sits, stands or sleeps 'moderately below average' is not disabled under the [ADA]") (quoting *Kelly v. Drexel Univ.,* 94 F.3d 102, 107 (3d Cir. 1996)).[8]

The Court does not doubt that plaintiff's vision is restricted by her condition. But plaintiff has failed to present evidence that it was *significantly* restricted, or that she was substantially

---

[8]    *See also Chanda v. Engelhard/ICC,* 234 F.3d 1219, 1222 (11th Cir. 2000) (concluding that plaintiff's tendinitis, while limiting, did not impose the statutorily required substantial limitation on his ability to perform manual tasks) and *Hilburn v. Murata Elec. North America, Inc.,* 181 F.3d 1220, 1228 (11th Cir. 1999) (holding that diminished tolerance for normal daily activities did not constitute a substantial limitation as required by the ADA).

14

limited in any other major life activity, at the time of her termination.[9] Crediting plaintiff's testimony concerning all of the activities she was able to perform when she was terminated, plaintiff cannot demonstrate that she was disabled as that term is defined by § 12102(2)(A).

      2.   <u>Plaintiff has no "record" of being disabled under § 12102(2)(B).</u>

Neither can plaintiff demonstrate that she has a "record" of being disabled. (*See* Pl.'s Br. [33] at 8.) An individual has a record of being disabled if she "has a history of, or has been mis-classified as having, a[n] . . . impairment that substantially limits one or more major life activities." *Hilburn v. Murata Elec. N. Am., Inc.,* 181 F.3d 1220, 1229 (11th Cir. 1999)(citing 29 C.F.R. § 1630.2(k)(1997)). This provision is designed to prevent discrimination based on a plaintiff's "history of disability." *Id.* As such, it requires plaintiff to have "actually suffered a[n] . . .

---

[9]  Plaintiff suggests that, in addition to the major life activity of seeing, she was limited in her ability to drive, work, and perform household tasks. (Pl.'s Resp. [33] at 8.) As noted, driving is not a major life activity. *Chenowith,* 250 F.3d at 1329-30.) In addition, plaintiff's testimony concerning her ability to do her job and to perform routine daily activities precludes her argument that she is substantially limited in the activities of working and performing household tasks. *See Durley v. Apac, Inc.,* 236 F.3d 651, 657 (11th Cir. 2000)(finding that plaintiff was not substantially limited in the major life activity of working when she testified that she was able to perform her job).

impairment that substantially limited one or more of her major life activities."   *Id.*

As discussed above, plaintiff cannot demonstrate that her vision impairment substantially limited a major life activity at any time prior to her termination.   Moreover, the records plaintiff cites in support of her claim, including a doctor's description of her illness and her need to take medical leave to treat her condition, do not indicate an impairment that is "substantially limiting."   Like the evidence offered in support of plaintiff's claim under § 12102(2)(A), these items merely suggest that plaintiff suffered from a vision impairment.   They do not create a record that her impairment substantially limited any major life activity, as required to prevail on a claim under § 12102(2)(B).   *See Hilburn,* 181 F.3d at 1229 ("The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities.") and *Carr v. Publix Super Markets, Inc.,* 170 Fed. Appx. 57, 61 (11th Cir. 2006)("To establish a record of impairment under the ADA sufficient to be considered disabled, the record of impairment must show that the impairment substantially limited the claimant in one or more of his major life activities.").

As plaintiff cannot show that she has a record of being disabled under § 12102(2)(B), or that she is actually disabled under §

16

12102(2)(A), she is lacking the most essential element of an ADA discrimination claim.  Accordingly, defendant's motion for summary judgment on plaintiff's disability discrimination claim should be **GRANTED**.

### B.   Retaliation

Plaintiff also asserts a claim for ADA retaliation.   (Compl. [1] at ¶¶ 28-32.)  In support of this claim, plaintiff contends that defendant retaliated against her after she: (1) requested accommodations for her disability; and (2) complained about disability discrimination.  (*Id.*)  Plaintiff alleges that, as a result of her requests and complaints, defendant refused to consider her for promotion and terminated her employment.  (*Id.*)

#### 1.   Plaintiff's retaliation claim is barred by her failure to include the claim in her EEOC charge.

Plaintiff filed her EEOC charge on October 11, 2005.  (Pl.'s Response [33] at Ex. 1.)  In her charge, plaintiff alleged that defendant terminated her employment based on her disability, in violation of the ADA.  (*Id.*)  She specifically listed her termination date, April 28, 2005, as the earliest and latest date that the discrimination took place.  (*Id.*)  She did not allege that defendant retaliated against her.  (*Id.*)  Nor did she assert any other facts

17

that would support a claim for retaliation.[10]   (*Id.*)

Under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII, including filing a timely EEOC charge. *Zillyette v. Capital One Fin. Corp.,* 179 F.3d 1337, 1339 (11th Cir. 1999). A plaintiff's civil complaint is limited by the scope of the EEOC charge, specifically, "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge." *Gregory,* 355 F.3d at 1280 (quoting *Alexander v. Fulton County,* 207 F.3d 1303, 1332 (11th Cir. 2000)). Plaintiff did not allege any facts in her EEOC charge that could be read, even under the broadest interpretation, to encompass a retaliation claim. (Pl.'s Response [33] at Ex. 1.) *See Green v. Elixir Indus., Inc.,* 152 Fed. Appx. 838, 840 (11th Cir. 2005)(finding that plaintiff's race discrimination charge did not encompass a hostile work environment claim) and *Cabiness v. YKK (USA), Inc.,* 859 F.Supp. 582, 587 (M.D. Ga. 1994)("The claims of retaliation, hostile environment, and discriminatory terms and conditions of employment are not reasonably related to plaintiff's EEOC charge of wrongful discrimination."). Accordingly, defendant's motion for summary judgment on plaintiff's ADA retaliation claim should be **GRANTED**.

---

[10]   Plaintiff was represented by counsel when she filed her EEOC charge.   (Williams Dep. at 320, 326-27.)

18

AO 72A
(Rev.8/82)

2.    <u>Plaintiff cannot show that any adverse action followed
her protected expression.</u>

Moreover, there is no evidence in the record to support a retaliation claim.   In order to prove retaliation, plaintiff must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected expression and the adverse action.   *Shotz v. City of Plantation, Florida*, 344 F.3d 1161, 1180 (11th Cir. 2003); *Roberts v. Rayonier, Inc.*, 135 Fed. Appx. 351, 357 (11th Cir. 2005).[11]   Plaintiff suggests that she engaged in protected expression by: (1) requesting accommodations; and (2) complaining about discrimination.   (Compl. [1] at ¶¶ 28-32.)   Assuming that is true, there is no evidence that any adverse action resulted from plaintiff's protected expressions.

Plaintiff concedes that defendant acquiesced in all of her requests for accommodations, including : (1) granting plaintiff two

---

[11]   That plaintiff is not disabled, as defined by the ADA, does not bar her claim for ADA retaliation.   Plaintiff "is not required to prove that [s]he was seeking an accommodation for an actual disability covered by the statute" to prevail on her retaliation claim.   *Roberts*, 135 Fed. App. at 357.   "It is sufficient if [s]he establishes that [s]he had a reasonable belief that [s]he was disabled or regarded as disabled and thus entitled to an accommodation."   *Id*.   There is evidence in the record that plaintiff believed she was entitled to accommodations for the disease, and that her belief was "reasonable."   (*See* Williams Dep. at 18-20, 411-13.)

19

extended leaves of absence in 2001 and 2002; (2) allowing plaintiff to work on a modified schedule; (3) providing plaintiff a large computer monitor and an audio device attached to her computer; and (4) giving plaintiff an office with a window and natural light, even though her position did not merit a window office. (DSMF [29] at ¶¶ 8-9, 14.)   Following her requests for accommodations, plaintiff continued to receive favorable reviews and annual raises and bonuses. (Williams Dep. at Exs. 14, 24, 30.)   Plaintiff does not identify any promotion that she failed to receive shortly after making her requests, and she was not terminated until several years after she requested, and received, numerous accommodations.   *See Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004)(noting that three to four month time periods have been held insufficient evidence of causation).

With regard to plaintiff's complaints about discrimination, there is no evidence that plaintiff complained until she filed her EEOC charge.[12]   (*See* Compl. [1] at ¶ 19 and Pl.'s Resp. [33] at 16-17.) By that time, plaintiff had already been terminated. (Williams

---

[12]   Plaintiff claims that she engaged in protected expression when she complained about not receiving step-up pay. (Pl.'s Response [33] at 16.)  As noted, plaintiff was not eligible for step-up pay. (Jones Aff. at ¶ 5.)  Plaintiff's complaints about not receiving a benefit to which she was not entitled do not constitute "protected expression."

Dep. at Ex. 39.) Consequently, neither plaintiff's termination, nor her failure to receive a promotion while she worked for defendant, could be causally related to her complaint about discrimination. *See Johnson v. Booker T. Washington Broad. Serv., Inc.,* 234 F.3d 501, 507 (11th Cir. 2000)(affirming the district court's dismissal of plaintiff's retaliation claim where her protected expressions occurred after her employment ended).

As plaintiff cannot demonstrate a causal link between her protected expression and any adverse action by defendant, she cannot establish a *prima facie* case of retaliation. Accordingly, and for this additional reason, defendant's motion for summary judgment on plaintiff's retaliation claim should be **GRANTED**.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** as unopposed plaintiff's Motion to Amend [13], **GRANTS** defendant's Motion for Summary Judgment [28], **GRANTS** as unopposed defendant's Motion to Supplement [37] and **DENIES** as moot defendant's Motion to Strike [36].

SO ORDERED, this __17__ day of September, 2007.


_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

21